IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEVIN ANDREW STATON, JR.,<br><br>Defendant. | Case No. 2:21-cr-141 |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, by Jessica D. Aber, United States Attorney, Graham M. Stolle, Special Assistant United States Attorney, and John F. Butler, Assistant United States Attorney, now submits its position with respect to sentencing in accordance with the Order of this Court. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable advisory guidelines range to be a term of 37 to 46 months' imprisonment, based on a Total Offense Level of 21 and a Criminal History Category of I. In accordance with § 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and consulted with the Probation Office and defense counsel. The United States does not dispute any of the sentencing factors set forth in the PSR or the guidelines range calculation. There are no objections to the PSR from the government or from the defendant. The United States respectfully submits, for the reasons outlined below, that a sentence at the low end of the guidelines is appropriate and would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

  **I.**  **MOTION FOR ACCEPTANCE OF RESPONSIBILITY**

The United States moves this Court, pursuant to U.S.S.G. § 3E1.1(b) and based upon the

terms of the binding plea agreement in this case, to grant an additional one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant timely notified the United States of his intention to enter a plea of guilty, thereby allowing the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

## II.  BACKGROUND

The defendant, KEVIN ANDREW STATON, JR., was named in a two-count Criminal Information entered in Eastern District of Virginia, Norfolk Division, on December 8, 2021. ECF No. 1. Count One charges the defendant with Conspiracy to Make False Statements in Connection with Firearms Transactions, in violation of 18 U.S.C. § 371. Count Two[1] charges the defendant with False Statement During Purchase of a Firearm, in violation of 18 U.S.C. §§ 922(a)(6) & 924(a)(2). Criminal Forfeiture was also cited pursuant to 18 U.S.C. §§ 924(d); and 28 U.S.C. § 2461(c).

On December 17, 2021, in accordance with the terms of a written Plea Agreement the defendant appeared before The Honorable Lawrence R. Leonard, United States Magistrate Judge and pled guilty to Counts One and Two of the Criminal Information. ECF Nos. 5-13. The Court accepted his guilty plea and sentencing was continued to April 27, 2022, before The Honorable Mark S. Davis, Chief United States District Court Judge. ECF No. 12.

---

[1] Count Two involves the defendant's false statement to purchase a Glock, Model 23, .40 caliber semi-automatic pistol on November 13, 2019. This firearm was recovered seven months later in Philadelphia and was determined to have been used in the homicide of Jahmil Harris on March 21, 2020, a shooting involving multiple victims on May 28, 2020, and a shooting into a residence on May 30, 2020. PSR ¶ 9.

## III.  STANDARDS GOVERNING SENTENCING

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court made clear that sentencing courts should consult [the Sentencing] Guidelines and take them into account when sentencing." 543 U.S. at 264. The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Booker*, 543 U.S. at 264 (quoting 28 U.S.C. § 991(b) (1) (B)). In its recent decision in *Molina-Martinez v. United States*, the Court emphasized the role the Guidelines play in achieving "[u]niformity and proportionality in sentencing," and noted that "the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar." 136 S. Ct. 1338, 1346 (2016). The Fourth Circuit has provided the following guidance in the wake of *Booker*:

> A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).  Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) and (B).

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process.  First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in §

3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)).  In making this determination,

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

Under 18 U.S.C. § 3553(a), when imposing a sentence that is sufficient but not greater than necessary, the Court shall consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.

  IV.  **ARGUMENT**

  A.  **Nature and Circumstances of the Offense.**

The defendant's crimes are serious, but they are far more aggravated because of the unintended consequences of his actions—it can be argued that people are dead because of firearms he purchased and sold.  The seriousness of the defendant's crimes is exacerbated by the sheer number of times he committed them—the defendant purchased forty-five (45) firearms between June 2019 and June 2020.  ECF No. 18, PSR at ¶ 6. Many of these firearms were recovered throughout the country in connection with crimes, including multiple homicides, shootings, and in the possession of convicted felons. PSR ¶ 9.

Firearms in the wrong individuals' hands pose a significant danger and risk to community safety. In 2017, on average, there were 105-gun fatalities every day.[2] There were 14,542 homicides by firearm that same year.[3] The United States has a homicide rate that is approximately four to ten times higher than those of other Western industrialized nations.[4] In another study analyzing data from 2010, there were an estimated 337,960 nonfatal violent crimes committed with guns, and 73,505 people were treated in hospitals from nonfatal gunshot wounds.[5]

Researchers cite several reasons for rising violence in America, including interstate trafficking of firearms. In over 85% of gun crimes, the person found with the weapon is not the original purchaser.[6] Generally, 40% of such firearms come from friends and family, nearly 40% are from straw purchases, and about 10% are stolen.[7] This is all to suggest that the defendant's actions contributed to the rise in violent crime and that the firearms he trafficked caused a wide range of harm spanning the East Coast of the United States. The pervasive gun violence both locally and nationally is a direct result of the trafficking of firearms to individuals prohibited from possessing them, and the damage caused by the defendant will continue to ripple as more and more of the firearms he purchased and resold are recovered.

The defendant knew his conduct subverted the very regulations intended to keep firearms

---

[2] Reducing Gun Violence: What Works, and What Can be Done Now, Police Executive Research Forum, (March 2019), *at* https://www.policeforum.org/assets/reducinggunviolence.pdf, at 1 (last visited April 19, 2022).
[3] *Id*. at 4.
[4] *Id*. at 54.
[5] Dr. Daniel Webster and Jon Vernick, *Reducing Gun Violence in America*: *Informing Policy with Evidence and Analysis*, Johns Hopkins University Press (2013),
https://jhupress.files.wordpress.com/2013/01/1421411113_updf.pdf, *at* xxv (last visited April 19, 2022).
[6] *Id*. at 110.
[7] *Id*.

out of the hands of criminals. He admitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) that when he filled out an ATF form 4473 at a Federal Firearm License (FFL) Dealer and certified that he was buying the firearm for someone else, the FFL employee told him he could not do that. The defendant also admitted to an occasion in which he went to a gun store with his wife (who was twenty years old at the time) and brazenly asked her which firearm she wanted in the presence of an employee who then told the defendant to leave. Not only does the ATF form 4473 explicitly state, "if I am not the actual transferee/buyer [it] is a crime punishable as a felony under Federal law," but his admissions show he knew he could not purchase firearms for others but disregarded the law nonetheless for financial gain.

The intentional subversion of the law is clear through the defendant's own statements. He told the ATF, "Guns are like money," and "I'm buying [guns] knowing I'm going to be selling them, not for the long term." PSR ¶ 6. These statements show a total disregard for the danger he was creating. He also knew that he could sell guns at a marked-up price for prohibited individuals, when he stated, "people are so dumb." *Id*. He understood there was a premium owed to him for his willingness to do something his customers could not do on their own. *Id*.

Then when he was finally confronted by law enforcement, he made matters worse by attempting to conceal his extensive trafficking by deleting relevant information on his phone. PSR ¶ 8. He did this while standing in the presence of ATF agents who were insisting that the defendant surrender his phone[8]. While this does not rise to an enhancement for obstruction of justice it is still a relevant factor for the court to consider when gauging the defendant's mindset. He forced the

---

[8] "Staton continued to type on his phone and was told several times to stop what he was doing and give the phone to the agents. He told them "No" and continued to manipulate the phone." PSR ¶ 8.

agents to pry the phone from his hands while he was deleting information. He deleted evidence that was never recovered. PSR ¶ 8.

Making matters worse, agents also recovered 479 grams of marijuana in the form of edible gummies from the defendant's vehicle—the same vehicle that contained multiple firearms. *Id*. To the defendant's benefit, the United States elected not to charge him with a violation of 18 U.S.C. 924(c) (possession of a firearm during and relation to a drug trafficking crime)—a charge which carries a five-year mandatory minimum.

Fifteen (15) of the forty-five (45) firearms the defendant trafficked have been recovered from crime scenes. PSR ¶ 6 at 4. All but one of those recovered firearms were found at crime scenes in less than one year from the defendant's purchase. This "Time to Crime" is an aggravating fact against the defendant because it highlights that almost all the guns the defendant bought were sold to criminals who used them in violent crimes. As cited above, the pervasive gun violence in the United States is caused, in part, by the trafficking of firearms from individuals like the defendant. The violence that stems from the defendant's conduct is extensive and troubling. On September 6, 2020, a juvenile who was in possession of heroin and one of the firearms the defendant bought and sold attempted to flee from police in Washington D.C. PSR ¶ 9. On May 28, 2020, multiple victims were shot with one of the guns the defendant bought and sold. *Id*. On May 30, 2020, one of the defendant's guns shot into a residence. *Id*. On June 14, 2020, a convicted felon in Newport News possessed one of the defendant's guns. *Id*. On March 21, 2020, Jahmil Harris was killed with one of the defendant's guns. *Id*. On May 27, 2021, one of the firearms the defendant sold was recovered in Washington, D.C. and determined to have been used in another homicide on April 4, 2021, and a shooting on May 19, 2021. *Id*.

There are still twenty-five (25) firearms that have not been recovered that the defendant purchased and resold. PSR ¶ 6 at 4. It is too soon to know how many more homicides and shootings will occur with one of the defendant's guns. In all likelihood, no matter what term of imprisonment this Court chooses to impose, the consequences of the defendant's choices will continue to reverberate throughout the community even after he regains his freedom.

### B. History and Characteristics of Defendant.

The defendant is 23 years old and was raised in Chesapeake, Virginia as well as Florida. PSR ¶ 34. While his parents separated when he was young, they both remained active in his life. *Id.* He and his siblings had "more than the basic necessities and they were given everything they needed." *Id.* The defendant did not experience any physical or mental abuse as a child and there was no history of substance abuse in his family. *Id.* The defendant's father, who is a college professor, noted that his son never had a disciplinary problem growing up and was active in Boy Scouts, ROTC, church, and the high school drill team. *Id.* The defendant was also involved in Young Life and a service club. *Id.* He excelled in football, was a two time All American, and was offered scholarships to play football in college. *Id.* The defendant graduated from Norfolk State University with a Bachelor of Science in Health Service Management. PSR ¶ 47. He reports that he is currently pursuing a master's degree. PSR ¶ 48.

The defendant is married and has two children, one who is four and another born in May 2021. PSR ¶ 36. He owns a four-bedroom home and is employed fulltime at Norfolk General Hospital as a patient coordinator. PSR ¶¶ 37 and 50.

Based on paragraph 42 of the PSR, the government recommends that the defendant receive a mental health evaluation.

His History and Characteristics both weigh for and against him. On one hand, he is an educated, employed, well-rounded individual with strong family support and no criminal history. On the other hand, the fact that he was without criminal history, is the very status he used to facilitate his criminal scheme. Robust firearm regulations can stop a prohibited person from purchasing a firearm; however, this safeguard failed when the defendant subverted those regulations. It was the fact that he lacked a criminal history that enabled him to accomplish these extensive firearm trafficking crimes.

### C. Other Factors to be Considered under 18 U.S.C. § 3553(a)

Among the other factors a sentencing court is to consider under Section 3553(a), the United States would highlight the need for the sentence imposed in this case to afford adequate specific deterrence to future criminal conduct, general deterrence for those contemplating similar schemes, to promote respect for the law, and avoid unwanted disparities. The message to the community must be clear—the intentional subversion of firearm regulations will carry consequences.

The need for deterrence is significant considering the nature of this offense. Gun violence was fueled by this defendant's conduct. Everyday the public is flooded with news stories about gun violence. This case, which has media attention, is a chance to send a clear message that this conduct will not be tolerated. A sentence within the guidelines range will send a clear message that those that fuel gun violence through a "lie and buy" scheme will lose their freedom.

This Court should also consider similarly situated cases to avoid unwarranted disparities in sentencing. On March 10, 2022, in *United States v. Darren Lee Walker*, 2:21-cr-89, Judge Jackson sentenced the defendant to 156 months incarceration in connection with aiding and abetting the making of materially false statements during the purchase of a firearm and being a

9

felon in possession of a firearm. Mr. Walker was part of a straw-purchasing conspiracy in which Walker was the recipient of multiple firearm purchases. Walker then transported those firearms to Baltimore, Maryland to resell for a profit. Walker and his co-conspirators were responsible for trafficking at least 28 firearms. Mr. Walker, who had a Total Offense Level of 35 and a Criminal History Category VI faced advisory sentencing guidelines of 292 to 365 months incarceration. Government's Position on Sentencing, ECF No. 25, 2:21-cr-89.

In *United States v. Rakeim T. Richardson*, 1:21-cr-284, the defendant was sentenced to fifteen (15) months incarceration for trafficking eleven (11) firearms over a period of two and half years. The *Richardson* case is distinguished from the one at hand because Richardson's conduct occurred over a longer period but included far fewer firearms. Richardson's sentencing guidelines were 21 to 27 months incarceration. United States Position with Respect to Sentencing, ECF No. 37, 1:21-cr-284.

In *United States v. Jesus Funez Fuentes*, 1:21-cr-136, on October 20, 2021, the defendant was sentenced to seventy-eight (78) months incarceration for running a firearm trafficking conspiracy involving sixty-two (62) firearms as a prohibited person. He directed two co-conspirators to purchase the firearms on his behalf because he was a prohibited person. Fuentes' sentencing guidelines were 84 to 105 months incarceration with a Criminal History of V. The United States' Position on Sentencing, ECF No. 45, 1:21-cr-136.

In *United States v. Warren Demond Harrison*, 2:21-cr-47, Judge Jackson sentenced the defendant to seventy (70) months incarceration for participating in a firearm trafficking conspiracy involving twenty-nine (29) firearms. Harrison's sentencing guidelines called for a range of 70 to 87 months incarceration with a Criminal History of I. Government's Position on Sentencing, ECF

No. 27, 2:21-cr-47. Harrison had one misdemeanor conviction for driving on a suspended license. He also received a base offense of 20 because he was a prohibited person at the time of the offense for a pending assault and battery, a crime of violence. Harrison received money from a co-conspirator to purchase the firearms. Harrison then purchased a firearm from an FFL by making a false statement on the ATF form 4473 indicating the was purchasing the firearms for himself. The co-conspirator then transported the firearms out of state and sold them for profit.

The defendant's case most closely resembles the *Harrison* case. Both Harrison and the defendant were engaged in similar conduct, specifically the role of purchasing the firearms for further distribution. The defendant in this case trafficked more firearms than Harrison but both fall within the 25-99 firearm range outlined in U.S.S.G. § 2K2.1(b)(1)(A). At seventy (70) months' imprisonment, Harrison received the low-end of his guidelines.

While the government believes a low-end guidelines sentence is appropriate given the facts and circumstances of this case and the importance of promoting general deterrence and avoiding disparities, we also recognize that the Court may credit the defendant's decision to waive grand jury and plead guilty to a Criminal Information. If the Court decides to vary downward based on this and his History and Characteristics, which weigh in his favor, we respectfully request the Court not to vary downward below 28 months. With credit for good time served, the defendant would be released in less than two years. To sentence him below 28 months could create an unwarranted sentence disparity and hinder efforts for general deterrence.

V. **CONCLUSION**

While punishment is one factor to consider, the United States focuses its recommended sentence on the need to protect the public and the need for general deterrence. The majority of the

firearms involved in the charged conspiracy have not been recovered and continue to pose a potential threat to the community. This danger is precisely why Congress enacted legislation regulating the lawful sale of firearms, intended to document and verify the details and legality of firearms purchases. These facts are significant and merit a guidelines sentence to deter future similar violations from those who might engage in straw purchasing firearms. A clear message must be sent that firearm traffickers will be held responsible in serious ways given the danger they create by putting illegal firearms into the marketplace for criminals. Their actions add fuel to the rising flames of violent crime in this country and often destroy the lives of others—including people they have never met. Taking all the 3553(a) factors into account, the government submits that a sentence at the low end of the guidelines is appropriate and would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:      //s//
Graham M. Stolle
Special Assistant United States Attorney
John F. Butler
Assistant United States Attorney
United States Attorney's Office
World Trade Center, Suite 8000
101 W. Main Street
Norfolk, Virginia 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
Graham.stolle2@usdoj.gov
john.f.butler@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of April 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

    Jon M. Babineau, PC
    150 Boush Street
    Suite 601
    Norfolk, VA 23510
    757-622-8631
    Fax: 757-227-5901
    Email: jon@babineaulaw.com

I further certify that on this 20th day of April 2022, I caused a true and correct copy of the foregoing Position of the United States with Respect to Sentencing Factors to be e-mailed to the following:

    Jeffrey A. Noll
    United States Probation Officer
    600 Granby Street
    Suite 200
    Norfolk, Virginia 23510

                                                  By:     //s//
                                                                Graham M. Stolle
                                                                Special Assistant United States Attorney
                                                                United States Attorney's Office
                                                                World Trade Center, Suite 8000
                                                                101 W. Main Street
                                                                Norfolk, Virginia 23510
                                                                Office Number: 757-441-6331
                                                                Facsimile Number: 757-441-6689
                                                                Graham.stolle2@usdoj.gov